# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 9, 2016 Session

## ROY LEONARD SEWELL v. DIANE HOLLAND SEWELL

**Appeal from the Circuit Court for Hamilton County**
**No. 13D172      W. Neil Thomas, III, Judge**

_____

**No. E2015-00983-COA-R3-CV-FILED-MAY 27, 2016**

_____

In this post-divorce parenting and child support action, the father filed petitions in January 2013 to register and modify the parties' 1997 Georgia divorce decree in the Hamilton County Circuit Court ("trial court"). In the divorce decree, the Georgia court had, *inter alia*, designated the mother as the primary residential parent of the parties' infant son and directed the father to pay weekly child support. The trial court subsequently entered an agreed order registering the Georgia decree. Following a hearing conducted in March 2013, the trial court entered an order designating the father as the primary residential parent, incorporating a modified permanent parenting plan order, and setting child support to be paid by the mother. The mother subsequently filed a petition to register and enforce a 1998 Georgia court order finding the father in contempt and a 2003 Georgia income deduction order. She concomitantly filed an amended counter-petition, alleging several counts of willful contempt against the father, including nonpayment of child support and uninsured medical expenses, as well as unlawful possession of personal property purportedly belonging to the mother. The father subsequently filed a petition for contempt, alleging that the mother had willfully failed to pay child support pursuant to the trial court's March 2013 order. During a two-day bench trial conducted in July 2014, the parties stipulated that the father had received Social Security disability payments from 2004 through 2013 and that the mother had received a total of $107,037.00 in related disability benefits paid on behalf of the child during that time span. Upon consideration of the evidence, as well as subsequent stipulations and pleadings filed by the parties, the trial court found that because the father had not petitioned for a modification of his child support prior to filing his petition to modify custody, he could not be credited with the Social Security benefits paid to the mother on the child's behalf. The court did, however, offset the Social Security disability benefits paid to the mother against the uncovered medical expenses claimed by the mother. In an order entered in March 2015, the court awarded the mother a judgment for a child support arrearage in the amount of $46,592.68 plus statutory interest. The court found the father in contempt for failing to maintain life insurance as ordered by the Georgia court but dismissed all other allegations of contempt. Father has appealed the

arrearage award, and Mother has raised issues regarding the Child's uncovered medical expenses, the dismissal of her remaining contempt allegations, and attorney's fees. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Melissa Thomas Blevins, Jasper, Tennessee, for the appellant, Roy Leonard Sewell.

Diane Holland Sewell, Chattanooga, Tennessee, Pro Se.

**OPINION**

I.  Factual and Procedural Background

The parties were divorced by order of the Superior Court of Catoosa County, Georgia ("Georgia court"), on December 17, 1997.  One child was born to the marriage, B.J.S. ("the Child"), who was eighteen months old at the time of the divorce judgment.  The Georgia court designated the original plaintiff, Diane Holland Sewell ("Mother"), as the primary residential parent.  The divorce decree provided the original defendant, Roy Leonard Sewell ("Father") with residential co-parenting time for two days on alternate weeks and directed him to pay Mother $100.00 in weekly child support.  As pertinent to this action, Father was to obtain and maintain a $50,000.00 life insurance policy on himself with Mother as beneficiary, and he was to be one-hundred percent responsible for the Child's medical, dental, drug, and optometry expenses unless he obtained health insurance for the Child, at which time he would be fifty-percent responsible for uncovered expenses.

The divorce decree also included a "Mutual Restraining Order," which provided:

Both parties are restrained and enjoined from harming, harassing, molesting or abusing one another in any way whatsoever, wherever they may be, and neither party shall cause anyone to act as their agent to violate any of the said terms of said Mutual Restraining Order.

We note that although questioning initiated by each party's respective counsel during testimony at trial in the instant matter implied that the parties' mutual restraining order prohibits any contact between the parties, the language of the order does not enjoin all

2

types of contact. Instead, the order enjoins the parties from "harming, harassing, molesting or abusing one another . . . ."

Two subsequent orders entered by the Georgia court were admitted as exhibits to this action during trial. On September 16, 1998, the Georgia court entered a Final Order of Contempt, *nunc pro tunc* to a hearing conducted on August 5, 1998, upon Mother's petition for contempt. The Georgia court found Father in willful contempt of court for failing to pay child support, demonstrate proof of life insurance, and return items of personal property set forth as Mother's personalty in the divorce judgment. The items specifically included crystal figurines, an art collection, and a Waltham watch. The Georgia court ordered that Father be incarcerated until such time as he purged the contempt, and the court entered a judgment in favor of Mother for a child support arrearage in the amount of $2,950.00, as well as attorney's fees, court costs, and a process server's fee. On March 13, 2003, the Georgia court entered an Income Deduction Order, finding that Father owed a child support arrearage in the amount of $7,542.88 as of November 30, 2002, and directing the United Brotherhood of Carpenters Pension Fund to deduct from all funds payable to Father $433.33 monthly in child support and $50.01 monthly toward payment of the arrearage.

At some point prior to the filing of this action, the parties and the Child had relocated to Tennessee. On January 9, 2013, Father filed a petition in the trial court, seeking to register the Georgia divorce decree and obtain primary custody of the Child, who was by then sixteen years old. Mother, acting through her former counsel, Richard B. Teeter, subsequently filed an answer and counter-complaint, agreeing to registration of the decree but alleging contempt against Father for non-payment of child support and the Child's medical expenses. By agreed order, the trial court registered the Georgia divorce decree on February 11, 2013.

Following a hearing conducted on March 20, 2013, the trial court found that a substantial and material change of circumstance had occurred, designated Father as the primary residential parent, and entered a modified permanent parenting plan. The modified plan also granted Father decision-making authority for the Child, provided Mother with eighty days per year of residential co-parenting time, and included a special provision that "[d]ue to the age of the child (17 years) he will have input as to his parenting time with his Mother due to current conflicts existing between Mother and son." The modified plan did not address child support but did direct that health insurance was to be maintained by Mother, who previously had obtained health insurance for the Child through her employment. Uncovered medical expenses were to be divided evenly by the parties.

On April 9, 2013, Father filed a "Motion for Possession of Personal Property," requesting that the trial court order Mother to return delineated items of personal property purportedly belonging to the Child. Following a hearing conducted on April 22, 2013, the trial court awarded possession of a 1991 Honda CRX automobile ("Honda") to Father for use by the Child and taxed Father with responsibility for any remaining payments due on the Honda, with the amount of debt owed to be verified by Mother. By agreement, Mother was to provide Father with the Child's health insurance card and bicycle. Reserving "all remaining issues of final possession of personal property" for future hearing, the court entered an order to this effect on April 26, 2013. Testimony demonstrated that on or about the date of this order's entry, Father and the Child came to Mother's home and obtained possession of the Honda and bicycle. Although testimony differed as to the date that Father and the Child retrieved other items purportedly belonging to the Child, it is undisputed that they picked up five garbage bags full of items from Mother's home or front yard, including a knife collection, a sword collection, one rifle, a toy car collection, various video games and gaming systems, and numerous videos and DVDs. At some point, Mother provided the Child's health insurance card to Father.

Although Mother's counsel participated in the April 2013 hearing, he had filed a motion to withdraw his representation on April 9, 2013, which was not addressed in the trial court's April 26, 2013 order. On July 15, 2013, Mother, acting without benefit of counsel, filed a "Response (with Objections) to Proposed Order with Motion for Reconsideration," requesting that the trial court reconsider the permanent parenting plan entered in March 2013 in light of the parties' relative incomes. Mother specifically alleged child support arrearages owed by Father, medical expenses for the Child not paid by Father, and the prior contempt judgment entered by the Georgia court. Mother also alleged that Father had unlawfully obtained title to the Honda without providing payment to her despite her prior testimony that she owed an outstanding debt to her father related to the Honda. Mother attached, *inter alia*, her own proposed permanent parenting plan and copies of the Georgia court's contempt order and income deduction order.

On July 30, 2013, the trial court entered an Order memorializing its finding that a substantial and material change in circumstance warranting modification had occurred; confirming and incorporating its March 20, 2013 permanent parenting plan order; and establishing Mother's child support obligation in the amount of $275.00 monthly. Upon Father's oral motion, the court bifurcated the proceedings related to Father's petition for modification from those related to Mother's petition for contempt, reserving contempt issues for future hearing. Attorney Teeter filed a second motion to withdraw as Mother's counsel on August 21, 2013. The trial court subsequently entered an order substituting attorney Grace E. Daniell to represent Mother on September 16, 2013.

4

On September 19, 2013, Mother filed a motion to alter or amend the trial court's July 30, 2013 order, pursuant to Tennessee Rules of Civil Procedure 59.05 and 60, asserting, *inter alia*, that the trial court did not have subject matter jurisdiction to award ownership of the Honda to Father. Mother averred that subsequent to the July 2013 order, Husband had obtained title to the Honda by presenting the trial court's order to the County Clerk's office in Marion County, Tennessee. She requested an award for the fair market value of the Honda, as well as the fair market value of the laptop, knife sets, game systems, coin collections, bicycle, and various transformers and other toys collected by Father and the Child from her home in April 2013. Mother also requested an award of attorney's fees.

Father filed a response on October 28, 2013, requesting denial of Mother's motion. He also filed his own motion for wage assignment, requesting that the trial court award him an arrearage for the child support Mother had not paid since entry of the order modifying custody. Mother filed a motion for wage assignment against Father on October 31, 2013. The trial court subsequently entered an agreed order on December 10, 2013, reserving the parties' respective motions for wage assignment until trial. On November 25, 2013, the trial court entered an order conditionally denying Mother's motion to amend and motion for reconsideration, granting Father temporary ownership of the Honda, and reserving all issues set forth in Father's motions for trial. Mother filed a motion to amend this order on December 10, 2013, requesting, *inter alia*, permission to amend her counter-petition to register and enforce the Georgia contempt order and income deduction order.

Following a hearing conducted on January 13, 2014, the trial court entered an order on February 3, 2014, granting Mother's motion to amend her counter-petition and, by agreement, Mother's motion to register and enforce the Georgia contempt order and income deduction order. Mother subsequently filed her amended counter-petition on February 7, 2014, alleging that Father had willfully committed contempt of court by failing to pay a child support arrearage in the amount of $53,550.00 accrued since entry of the 2003 Georgia income deduction order; failing to pay reasonable medical expenses; failing to pay $455.00 claimed as monthly payments on the Honda by Mother; registering the Honda in his own name; entering Mother's home without permission in April 2013 to take possession of the items Father claimed belonged to the Child; failing to return personalty awarded to Mother in the divorce judgment; and violating the mutual restraining order contained in the divorce judgment by twice attempting to interfere with Mother's employment, once in 2001 and once in 2013.

On July 18, 2014, Father filed a motion to amend his petition to allege, *inter alia*, that Mother had committed willful contempt of court by failing to pay her $275.00 weekly child support obligation since the March 2013 custody modification. He

subsequently filed an answer to Mother's amended counter-petition, denying all substantive allegations.

The trial court conducted a two-day bench trial on July 29-30, 2014. At trial, the parties stipulated that the STARS Child Support Enforcement Unit of Georgia ("STARS") documented payments made by Father to Mother during 2003 through 2005, reflecting payments of $4,833.40 in 2003; $5,316.74 in 2004; and $4,350.06 in 2005 for a total sum paid by Father during those years in the amount of $14,500.20. The parties also stipulated that the amount of Father's child support obligation for the time period spanning January 1, 2003, through March 31, 2013, was $52,300.00. It was undisputed that in 2002 Father became disabled and was awarded Social Security disability benefits in 2004 with retroactive benefits to 2002. Father, who was seventy years old at the time of trial, testified that he had suffered from diabetes for forty years and currently also suffered from high blood pressure, vision and memory loss, and heart disease, requiring five cardiac bypass surgeries. Mother acknowledged that in 2004, she began receiving Social Security disability benefits for the benefit of the Child related to Father's disability, including benefits retroactive to 2002. The parties further stipulated that Mother received a total of $107,037.00 in Social Security benefits for the time period spanning January 1, 2003, through March 31, 2013.

At the close of trial, the trial court reserved its ruling, providing counsel for both parties the opportunity to submit further information regarding the Child's medical expenses. On September 29, 2014, the parties filed joint stipulations. As pertinent to this appeal, they stipulated that Father had not provided health insurance for the Child and that "the cumulative sum of payments for the reasonable medical, dental, drug and optometry expenses" paid by Mother on behalf of the Child totaled $10,000.00. The trial court subsequently entered a Memorandum Opinion on October 24, 2013, addressing the issue of "the retroactivity of an offset to a child [support] arrearage, based upon disability payments under Social Security." The court found that Father's child support arrearage could not be offset by the Social Security disability benefits paid to Mother prior to the filing of Father's petition to modify custody. Also in the Memorandum Opinion, the court noted that an arrearage amount of $46,592.68 had been presented during trial but provided the parties an opportunity to schedule a conference with the court if an issue remained as to the amount of the arrearage.

On November 20, 2014, Mother filed a motion to alter or amend the Memorandum Opinion, averring that several issues upon which she requested relief remained undecided. In this motion, Mother requested statutory interest in the amount of $37,534.60. She attached to the motion an "Exhibit A," in which she calculated interest at the statutory rate of twelve percent on each weekly payment. *See* Tenn. Code Ann. § 36-5-101(f)(1) (2014) (providing for accrual of interest on unpaid child support "from the

date of the arrearage at the rate of twelve percent (12%) per year."); *Harber v. Harber*, No. E2007-00547-COA-R3-CV, 2008 WL 836273 at *4 (Tenn. Ct. App. Mar. 31, 2008) (calculating interest on a child support arrearage at the statutory rate of twelve percent on each weekly payment). Mother subsequently filed a motion for court costs and $14,868.50 in attorney's fees on December 4, 2014. Father filed a response, objecting to Mother's proposed amendments and asserting that Mother should be denied any further relief due to the amount of Social Security disability benefits she had received over and above the amount of Father's child support obligation.

On December 15, 2014, the trial court entered a Memorandum and Order, treating Mother's motion to alter or amend as a motion for clarification because the Memorandum Opinion had not been an order. The court clarified that although after the parties filed stipulations, the court had "understood that the sole issue for resolution was whether Social Security Disability benefit payments would be used to offset child support," Mother's motion indicated that she sought resolution of other remaining issues. The court delineated these issues as:

1. Compensation for reasonable medical, dental, drug and optometry expenses;

2. Contempt for failure to obtain life insurance;

3. Judgment in the amount of $350 for figurines and a watch;

4. Contempt for violation of a Restraining Order;

5. Judgment for child support arrearage plus interest;

6. Contempt for failure to pay child support.

The trial court addressed each issue in turn, finding that (1) in accordance with the court's discretion in enforcing the non-contractual medical-expense provision of the divorce judgment, Father's responsibility to pay medical expenses was offset by the Social Security disability payments made to Mother; (2) Father was in willful contempt of court for failing to obtain life insurance as directed in the divorce judgment; (3) testimony demonstrated that the personalty for which Mother requested a judgment (crystal figurines, art collection, and watch) had been destroyed in a fire, and no judgment for their value would be entered; (4) Mother had failed to prove that Father was in willful contempt of court for violation of the restraining order; (5) Father's child support arrearage would be entered pursuant to the Memorandum Opinion, plus interest "due as a matter of law at the statutory rate"; and (6) there would be no finding of willful

7

contempt against Father apart from his failure to obtain life insurance. The court also declined to enter an award to Mother for "payments allegedly due for the Honda . . . [b]ecause of the uncertainty in the record as to the amount of payments having been made and the amounts due . . . ." The court instructed Mother's counsel to provide a statement of attorney's fees related to enforcement of the life insurance provision. Mother filed a supplemental application for attorney's fees and costs, requesting attorney's fees in the amount of $3,093.50 for work performed related to the life insurance issue, as well as court costs.

The trial court subsequently entered an order on March 16, 2015, memorializing the above findings and awarding to Mother a judgment in the amount of $46,592.68 for the child support arrearage plus statutory interest and $1,500.00 in reasonable attorney's fees related to the issue of life insurance. Incorporating its October 2013 Memorandum Opinion and November 2014 Order, the court expressly denied "[a]ll other pending claims of the parties not addressed by this Order . . . ."

On April 14, 2015, Father filed a motion to alter or amend, asserting that (1) court costs should be re-taxed at the close of the matter; (2) he should be granted an offset of his child support arrearage by the amount of child support Mother had not paid since March 2013; (3) the court should reconsider application of *Pestell*; (4) the amount of interest on the arrearage had been computed incorrectly; and (5) attorney's fees awarded were excessive for the limited issue involved. Mother filed a response, objecting to Father's proposed amendments. The trial court entered an order on April 30, 2015, granting Father's motion only "insofar as the taxation of costs which will be re-taxed upon application of [Father]." The court denied Father's motion in all other respects. Father timely appealed. Upon attorney Daniell's subsequent motion, this Court granted her request to withdraw as counsel for Mother because she had not been retained on appeal. Mother has thereafter represented herself on appeal.

## II. Issues Presented

On appeal, Father presents one issue, which we have restated as follows:

1.  Whether the trial court erred by finding that Father is not entitled to a credit against his child support arrearage for Social Security disability benefits paid to Mother for the benefit of the Child prior to the filing of Father's petition to modify custody of the Child.

Mother presents four issues, which we have similarly restated as follows:

8

2.      Whether the trial court erred by declining to enter a judgment against Father for medical expenses incurred on behalf of the Child.

3.      Whether the trial court erred by declining to find Father in contempt of court for violating the restraining order entered by the Georgia court as part of the 1997 divorce judgment.

4.      Whether the trial court erred by awarding to Father personal property belonging to Mother.

5.      Whether the trial court erred by declining to award more than $1,500.00 in attorney's fees to Mother.

### III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

This Court has described the proper standard of review for child support determinations as follows:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

9

\* \* \*

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 463 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

IV. Social Security Disability Benefits Paid for Benefit of the Child

Father contends that the trial court erred by declining to credit him with the $107,037.00 Mother received in Social Security disability benefits on behalf of the Child from January 2003 through March 2013. He requests that this Court reverse the entire arrearage judgment of $46,592.68 plus statutory interest. Mother does not directly address Father's argument in this regard, although she does note that Father did not file a petition to modify child support. Upon careful review, we determine that the trial court was correct in determining that offsetting Father's child support arrearage by the Social Security disability benefits paid to Mother for the period prior to Father's filing of the petition to modify custody would constitute an impermissible retroactive modification of Father's child support obligation.

In considering the parties' arguments, the trial court recognized well-settled Tennessee law that "Social Security disability benefit payments paid to the custodial parent may be credited against the disabled parent's support obligation." *See Orr v. Orr*, 871 S.W.2d 695, 696 (Tenn. Ct. App. 1993); *see also* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(1.)(xiv); *Young v. Engel*, No. M2008-02402-COA-R3-CV, 2010 WL 744528 at *7 (Tenn. Ct. App. Mar. 3, 2010) ("[T]he guidelines do not permit the court to disregard a child's Social Security check when calculating child support if that check is derived from an obligor parent's account."). The trial court determined, however, that disability payments made before Father filed his petition to modify custody could not be credited against Father's child support arrearage. The court stated in its Memorandum Opinion in pertinent part:

> Although the Court has examined the court file in detail, the Court can find no petition to amend the final decree entered in this cause to reduce the child support of [Father] based upon Social Security payments. The Court has reviewed the authority submitted with respect to offsets to child support based upon Social Security payments and concludes that such Social Security payments may be used to offset child support arrearages, retroactive to the date of the filing of a motion to amend to modify child support payments based upon those Social Security payments. Pestell v. Pestell, [No. M2005-00749-COA-R3-CV, 2006 WL 2527642 (Tenn. Ct. App. Aug. 24, 2006).] It would seem that modification of the child support obligation of [Father] to pay such support to [Mother] would have terminated when he was named primary residential parent, but no Order to that effect was entered, and there is no pleading requesting modification prior to that date. The child support obligation of [Father] continues,

11

therefore, until that date. If the amount of the obligation to that date is $46,592.68, then [Mother] is entitled to a judgment in that amount.

Father asserts that the trial court erred by relying on this Court's decision in *Pestell v. Pestell*, No. M2005-00749-COA-R3-CV, 2006 WL 2527642 (Tenn. Ct. App. Aug. 24, 2006). In *Pestell*, this Court addressed a father's request for reimbursement of child support payments he had made to the mother while she also received Social Security disability benefits on behalf of the child resulting from the father's disability. *Id.* at *2. The father had filed a petition for modification of child support, and the parties had agreed to a reduction of child support based on calculation of the disability payments. *See id.* at *1-2 (noting that based on well-settled law, "there is no question as to the modification from the date of the petition."). The father, however, was seeking a judgment against the mother in the form of reimbursement "so that Father can receive credit for disability payments made on his behalf while he also made support payments."). *Id.* at *2. This Court concluded that "Tenn. Code Ann. § 36-5-101(f)(1) prevents a modification of child support that would require a reimbursement for any period before a petition to modify is filed."). *Id.* at *4. Father argues that *Pestell* is distinguishable from the instant action because Father does not seek a reimbursement or judgment against Mother. While acknowledging that Tennessee Code Annotated § 36-5-101(f)(1) operates to prohibit retroactive modification of child support, Father argues that in requesting an offset, or credit, against the arrearage, he is not seeking an impermissible retroactive modification of his child support obligation. We disagree.

The version of Tennessee Code Annotated § 36-5-101(f)(1) (2014)[1] in effect at the time Father's petition was filed provided:

> (f)(1) Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. <u>Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.</u> If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage

---

[1] The General Assembly amended subsection (f)(1), effective July 1, 2015, to include reference to an exception newly codified at subsection (f)(6), which now provides that "[w]ith the approval of the court, the obligor and obligee shall have the right to compromise and settle a child support arrearage balance owed directly to the obligee." *See* Tenn. Code Ann. § 36-5-101(f)(1), (6)(A) (Supp. 2015) (providing also that "[i]n all Title IV-D cases, the department of human services or its contractors must be a party to the action."); 2015 Pub. Acts, Ch. 200 §§ 1-2 (S.B. 101).

at the rate of twelve percent (12%) per year.  All interest that accumulates on arrearages shall be considered child support.  Computation of interest shall not be the responsibility of the clerk.

(Emphasis added.)  *See Alexander v. Alexander*, 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000) ("[A] court has no power to alter a child support award as to any period of time occurring prior to the date on which an obligee spouse files his or her petition.") (analyzing an earlier version of Tennessee Code Annotated § 36-5-101); *Harber*, 2008 WL 836273 at *3 ("[T]he trial court was not authorized to forgive an accrued child support arrearage, but could only modify the child support obligation back to 'the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.'") (quoting Tenn. Code Ann. § 36-5-101(f)(1)).

As this Court explained in *Pestell*:

By the enactment of Tenn. Code Ann. § 36-5-101(f)(1), the legislature has clearly decided that a court may not alter pre-petition child support obligations.  This is true even if it appears unfair or inequitable to one of the parties.  There are a number of situations where "fairness" might compel one to adjust child support yet the legislature clearly decided that once the obligation to pay is ordered, then it may not be modified retroactively prior to the date a petition to modify is filed and served.

*Pestell*, 2006 WL 2527642 at *4.  This Court concluded that the father's request for a judgment that he characterized as a "reimbursement" or "credit" amounted to a request to have "the child support order retroactively altered to allow the disability payments to substitute for his payments." *Id.* at *5.

In support of his argument, Father relies on this Court's earlier decision in *Attaway v. Attaway*, No. E2000-01338-COA-R3-CV, 2001 WL 378744 (Tenn. Ct. App. Apr. 16, 2001), *perm. app. denied* (Tenn. Sept. 17, 2001).  The mother in *Attaway* appealed the trial court's denial of her statute of limitations defense and affirmed the lower court's credit for Social Security payments against the father's child support obligation. *Attaway*, 2001 WL 378744 at *1.  Although the central issue on appeal was the applicable statute of limitations, this Court also affirmed the trial court's finding that Social Security benefits previously paid on behalf of the child could be credited only up to the amount of the child support obligation. *Id.* at *3.  In so concluding, the *Attaway* Court cited this Court's 1987 decision in *Sherrell v. Sawyer*, No. 87-68-II, 1987 WL 12498 (Tenn. Ct. App. June 19, 1987).  Addressing as a matter of first impression the issue of whether Social Security death benefits could be credited retroactively against an existing child support obligation, the *Sherrell* Court held that "the death benefits paid to

[the child] from the Social Security account of his deceased father may be credited against the monthly obligations under the agreement of the parents." *Sherrell*, 1987 WL 12498 at *4. In *Pestell*, this Court directly addressed the portion of the *Sherrell* holding regarding credit for Social Security benefits and determined that the holding did not govern the issue because Tennessee Code Annotated § 36-5-101 had been amended in March 1987 to include subsection (f)(1). *See Pestell*, 2006 WL 2527642 at *3-4 ("By the enactment of Tenn. Code Ann. § 36-5-101(f)(1), the legislature has clearly decided that a court may not alter pre-petition child support obligations."). We determine Father's reliance on *Attaway* to be unavailing.

Moreover, Tennessee's Child Support Guidelines provide direction for the treatment of Social Security benefits in the <u>calculation</u> of child support when a trial court is establishing or modifying the amount. As this Court has explained:

> The definitions section of the guidelines states when calculating a parent's "adjusted gross income," one must add "any Social Security benefit paid to the child on the parent's account." Tenn. Comp. R & Regs. 1240-2-4-.02(1)(a). Another section declares that "Federal benefits, including veteran's benefits and Social Security Title II benefits, received by a child shall be included as income to the parent on whose account the child's benefit is drawn *and applied against the support obligation ordered to be paid by that parent.*" Tenn Comp. R & Regs. 1240-2-4-.04(3)5[(i)] (emphasis added).

> Thus, the guidelines do not permit the court to disregard a child's Social Security check when calculating child support if that check is derived from an obligor parent's account. Instead, the Social Security check must be factored into the child support equation in two places. First, it must be added to the obligor's gross income for the purpose of calculating a presumptively correct amount of child support. Then it must be subtracted from the resulting figure to reduce the proportion of the child's support that comes directly from the obligor's funds.

*Young v. Engel*, 2010 WL 744528 at *7.

The Child Support Guidelines further provide in pertinent part:

> If after calculating the parent's gross income as defined in 1240-2-4-.04(3), including the countable benefit paid for the child, referred to in part 5(i) above, and after calculating the amount of the child support obligation using the Child Support Worksheet, the amount of the child support award

14

due from the parent on whose account the child is receiving benefits is less than or equal to the benefit paid to the caretaker on behalf of the child on that parent's account, the child support obligation of that parent is met and no additional child support amount must be paid by that parent.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)5.(iii)(I). We find no provision in the Child Support Guidelines allowing credit for Social Security disability payments retroactive to the filing of a petition for modification, and we determine that such an allowance would be contrary to the operation of Tennessee Code Annotated § 36-5-101(f)(1).

If prior to the modification of custody in the instant action, Father had filed a petition to modify the amount of child support, the Social Security disability benefits paid to Mother on behalf of the Child properly could have been considered in calculating the amount of child support from the date of the petition forward. *See* Tenn. Code Ann. § 36-5-101(f)(1); Tenn. Comp. R. & Regs. 1240-02-04-.04. However, Father did not file a petition to modify child support prior to his January 2013 petition requesting designation as the primary residential parent. We therefore determine that the trial court did not err by denying Father's request for an offset as an impermissible retroactive modification of child support.

## V. Amount of Statutory Interest

Although on appeal neither party has raised the issue of the amount of statutory interest awarded on the child support arrearage, *see* Tenn. Code Ann. § 36-5-101(f)(1), we conclude that some clarification is necessary. Upon our thorough review of the record, we determine that the trial court approved, through its December 15, 2014 Memorandum and Order, the calculation of statutory interest at $37,534.60, which calculation was attached to Mother's motion to alter or amend the prior Memorandum Opinion. In responding to Mother's motion, the court stated: "With respect to the interest issue on child support, that amount is due as a matter of law at the statutory rate." It appears to have been an oversight that the "Exhibit A" attached to the subsequent March 16, 2015 order included only the arrearage calculation without the interest calculation that had been included in the "Exhibit A" to Mother's motion to alter or amend the Memorandum Opinion.

Father questioned Mother's method of computing statutory interest in his motion to amend the March 16, 2015 order, noting that the interest is to be calculated *per annum*, *see* Tenn. Code Ann. § 36-5-101(f)(1), and apparently taking issue with the calculation of interest on each weekly payment in Mother's "Exhibit A" to the motion. *See, e.g., Harber*, 2008 WL 836273 at *4 (explaining that in correcting the calculation of statutory

15

interest pursuant to Tenn. Code Ann. § 36-5-101(f)(1), this Court calculated interest on each weekly payment). The trial court denied this portion of Father's motion, and Father has not raised the issue of the interest computation on appeal. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). We therefore affirm the trial court's acceptance of $37,534.60 as the calculated statutory interest due on the child support arrearage of $46,592.68. The total judgment of child support awarded to Mother, inclusive of the arrearage and statutory interest, is $84,127.28.

## VI. Medical Expenses

Mother asserts that the trial court erred by declining to enter a judgment against Father for his portion of uninsured medical expenses incurred on behalf of the Child. The parties stipulated to the amount of these expenses as $10,000.00. In its December 15, 2014 Memorandum and Order, the trial court noted that Mother sought resolution of an issue she had raised regarding reimbursement for or payment of the Child's reasonable medical, dental, drug and optometry expenses. In ruling that Father's share of these expenses was offset by the Social Security disability payments made to Mother on behalf of the Child, the trial court stated:

> As to the unpaid medical expenses, [Father] argues that the amount paid to [Mother] with respect to Social Security Disability benefits should be considered to be an offset to that amount. If it were a matter of discretion, the argument of [Father] would be persuasive. That amount, however, was established by the Decree entered in Catoosa County in the divorce of the parties and was not entered pursuant to agreement since [Father] appeared and contested the proceeding. Consequently, since the matter was not a matter of contract as it would have been if there had been a marital dissolution agreement, then this Court is afforded the discretion as to whether or not to enforce the Decree entered between the parties as such. Consequently, [Father] will be afforded an offset to the amount of unpaid medicals by the amount of the Social Security payments made to [Mother].

At the outset, we note that Father has not addressed the issue of medical expenses on appeal. Mother has raised the issue without providing supporting argument or authority. *See* Tenn. R. App. P. 27(a)(7)-(b) (requiring the appellee to include regarding issues raised in the responsive brief, *inter alia*, "the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . ."). However, because the trial court's credit to Father of Social Security disability benefits against the stipulated $10,000.00 in uninsured medical expenses for the Child is an issue closely related to the child support issue raised by Father, we will address the

issue here rather than deeming it waived by Mother.  *See Bean v. Bean,* 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (explaining that "failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

In the 1997 divorce decree, the Georgia court calculated child support based upon the "applicable percentage of gross income" for each parent.  The Georgia court determined that Father was obliged to pay seventeen percent of his weekly gross income, which at the time was found to be $575.00.  The child support obligation was thus set at $100.00 weekly.  The Georgia court addressed "Health Insurance" within a separate section of the divorce decree subsequent to its determination of Father's child support obligation.  This section provided in full:

### HEALTH INSURANCE

[Father] shall be responsible for and pay any and all reasonable medical, dental, drug and optometry expenses for the minor child, unless he obtains health insurance for said child, at which time the parties shall equally divide any and all medical, dental, drug and optometry expenses not covered by said insurance.

The Georgia court made no findings regarding health insurance in its September 1998 contempt order or March 2003 income deduction order.  It is undisputed that Father never obtained health insurance for the Child and that Mother eventually provided such insurance through her employment.

In the instant action, the trial court found that the health insurance provision of the divorce decree had not been included within the Georgia court's calculation of child support.  We agree.[2]  The trial court also found that inasmuch as the parties had not entered a marital dissolution agreement, the health insurance provision of the divorce decree was not contractual.  *See Long v. McAllister-Long,* 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006) (explaining that with the two "notable exceptions" of child support and alimony, which remain modifiable by the courts, "the agreements in a marital dissolution agreement are enforceable contract obligations.").  We conclude that the trial court did not abuse its discretion by declining to enter a judgment against Father for the $10,000.00

---

[2] Under the current version of Tennessee's Child Support Guidelines, health expenses are included as an adjustment to the child support schedule.  *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(a)1. ("The additional expenses for the child's health/dental insurance premium, recurring uninsured medical expenses, and work-related childcare shall be included in the calculations to determine child support."). The Georgia court, of course, would not have been governed at the time of the divorce decree's entry by Tennessee's Child Support Guidelines.

17

in stipulated medical expenses upon the court's finding that those expenses had been offset by the $107,037.00 paid to Mother in Social Security disability benefits on behalf of the Child. *See Richardson*, 189 S.W.3d at 725 ("[A] trial court's discretionary decision will be upheld as long as it is not clearly unreasonable . . . .").

## VII. Mother's Remaining Issues

Mother also asserts that the trial court erred by (1) declining to find Father in contempt of court for violating the restraining order provided in the divorce decree, (2) awarding to Father personal property belonging to Mother, and (3) awarding only $1,500.00 in attorney's fees to Mother. We determine that Mother has waived these issues by failing to comply with the requirements of Tennessee Rule of Appellate Procedure 27(a)(7)-(b) to cite the appellate record appropriately, provide argument regarding each issue, and cite relevant authority.

As this Court has explained:

> Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue. *See State v. Schaller,* 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.* 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson,* 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993). Moreover, an issue is waived where it is simply raised without any argument regarding its merits. *See Blair v. Badenhope,* 940 S.W.2d 575, 576-577 (Tenn. Ct. App. 1996); *Bank of Crockett v. Cullipher,* 752 S.W.2d 84, 86 (Tenn. Ct. App. 1988) . . . . This Court is under no duty to verify unsupported allegations in a party's brief, or for that matter consider issues raised but not argued in the brief. *Duchow v. Whalen,* 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993) (*citing Airline Const. Inc., v. Barr,* 807 S.W.2d 247 (Tenn. Ct. App. 1990)).

*Bean,* 40 S.W.3d at 55-56.

Mother does attempt in her "Statement of the Facts" section to cite the record by listing pages in the record corresponding to the issues. These lists of pages in the record, however, contain no further explanation of how the record supports Mother's position. Mother presents no specific argument regarding each issue. As to relevant authority, Mother includes an appendix to her brief comprised of several decisions rendered by this Court. However, Mother offers no explanation of her rationale for including these cases, and although the attached decisions address child support generally, none of the attached decisions directly addresses the remaining issues raised by Mother. We recognize that as

a self-represented litigant, Mother's pleadings "should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *See Stewart*, 368 S.W.3d at 462. However, we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *See Hessmer*, 138 S.W.3d 901 at 903.

Moreover, having thoroughly reviewed the record, we discern no error in the trial court's decision that Mother failed to carry her burden of proof on the remaining contempt issues and request for a judgment as to personalty. *See* Tenn. R. App. P. 13(d) (explaining that appellate review of findings of fact is conducted with a presumption of correctness unless the preponderance of the evidence is otherwise.). We emphasize that the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison*, 338 S.W.3d at 426; *Jones*, 92 S.W.3d at 838. We also find no abuse of discretion in the trial court's award to Mother of $1,500.00 in reasonable attorney's fees related to the contempt issue on which she prevailed. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) ("[A] determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion.").

## VIII. Conclusion

For the reasons stated above, we affirm the judgment of the trial court. We clarify that the total amount of statutory interest awarded to Mother is $37,534.60, for a combined award to Mother, inclusive of Father's $46,592.68 child support arrearage and statutory interest, of $84,127.28. The costs on appeal are assessed against the appellant, Roy Leonard Sewell. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

19